## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DINA KELLER, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )     **Case No. CIV-22-996-SM** |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dina Keller brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(c). Docs. 15, 16.[1]

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings, arguing the Administrative Law Judge (ALJ) failed to assess Plaintiff's consistency under the correct legal standards and his findings are unsupported by substantial evidence. Doc. 17,

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the administrative record (AR) will refer to its original pagination.

at 1, 6-15. After careful review of the record, the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.      Administrative Determination.

### A.      Disability Standard.

The Social Security Act defines a disabled individual as a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B.      Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the

Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. The ALJ's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 11-25; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1)    had not engaged in substantial gainful activity since her alleged onset date of October 3, 2019;

(2)    had the following severe impairments: Ehlers-Danlos syndrome, pernicious anemia, recurrent chronic pancreatitis, major depressive disorder, and anxiety disorder;

(3)    had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)    had the residual functional capacity[2] (RFC) to perform light work except she is able to: frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, or crawl; perform work that requires no more than occasional work-related exposure to hazards,

---

[2]    Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

such as unprotected heights and unguarded moving machinery; occasionally interact with the public in a brief and superficial manner, such as expected of a stocker, but not in a more involved manner, such as expected of a cashier; and occasionally interact with and perform tandem tasks with coworkers;

(5)     was able to perform light, unskilled jobs that exist in the national economy, such as collator operator, marker, or router; and so,

(6)     had not been under a disability from October 3, 2019, through April 5, 2022.

*See* AR 13-25.

## 2.     Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II.     Judicial review of the Commissioner's final decision.

### A.     Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less

than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks omitted)). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052.

This Court "consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.*

"[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409

5

(2009) (placing the burden to show harmful error on the party challenging an agency's determination).

**B.     Issues for judicial review.**

Citing Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 (Oct. 25, 2017), Plaintiff asserts the ALJ's "analysis of [Plaintiff's] pancreatitis was flawed." Doc. 17, at 8-9. She argues the ALJ "failed to point to inconsistencies between the record and [Plaintiff's] reports regarding her chronic pancreatitis after acknowledging the waxing and waning nature of this impairment" and "failed to explain how the nature of [Plaintiff's] treatment for pancreatitis was inconsistent with her reports, when she required hospital admissions due to flare-ups in this severe impairment." *Id*. at 8.

**C.     Plaintiff's relevant medical history.**

Plaintiff's medical records reflect she has a history of pancreatitis with initial gastroenterology treatment in 2013. AR 493-94, 534, 677. She was asymptomatic until she had an acute flare-up on May 14, 2020. *See id*. at 492. She sought medical treatment in the emergency room (ER) for her epigastric pain. *Id*. at 493. Laboratory results showed elevated pancreatic enzymes. *Id*. at 496. The ER doctor admitted Plaintiff to the hospital for "acute pancreatitis."

*Id.* Doctors treated Plaintiff with intravenous fluids, bowel rest, and nausea and pain medication until they released her on May 19, 2020. *Id.* at 498-99.

On June 10, 2020, Plaintiff saw Dr. Christopher Miller for a follow-up visit after her hospital discharge. *Id.* at 676. Dr. Miller noted Plaintiff had her first pancreatic episode in 2013 which "required [endoscopic retrograde cholangiopancreatography] and stenting with Dr. [Allan P.] Weston." *Id.* at 677. Her second episode in May 2020 did not require stents and she was not on "pancreatic supplements." *Id.* Dr. Miller diagnosed her with upper abdominal pain and asked her to keep a "food diary in relation to [her] abdominal pain" and make a follow-up appointment with Dr. Weston for her "pancreatitis and abdominal pain." *Id.* at 679, 681.

Plaintiff saw Dr. Weston, a gastroenterologist, on February 22, 2021. *Id.* at 733. She complained of "recurrent epigastria pains, [right side] pains that can radiate to subscapular region, nausea and vomiting spells, and abdominal bloating." *Id.* at 736. Upon his physical examination, Dr. Weston noted Plaintiff was "hypersensitive to touch" in her right upper quadrant epigastric area. *Id.* at 736. Dr. Weston diagnosed her with "[e]pigastric pain likely [d]epression," "[i]rritable bowel syndrome," right upper quadrant pain, and "[n]ausea and [v]omitting likely [d]epression." *Id.* at 736-37. He ordered

7

laboratory tests and noted Plaintiff required "[l]ow to [m]oderate [s]everity" care for the visit. *Id.* at 737.

On September 21, 2021, Plaintiff sought treatment in the ER for abdominal pain, nausea and vomiting. *Id.* at 845-47. The ER doctor admitted her to the hospital with a diagnosis of abdominal pain and recurrent pancreatitis. *Id.* at 856. Doctors treated her with intravenous fluids and pain and nausea medication and discharged her in an improved condition on October 4, 2021. *Id.* at 859-60.

Plaintiff again sought treatment in the ER for abdominal pain on December 4, 2021. *Id.* at 953-54, 1019-20. Doctors admitted her to the hospital to treat her acute pancreatitis symptoms with intravenous fluids, pain and nausea medication, and a clear liquid diet. *Id.* at 954, 956, 958, 960-63, 965-68, 970-72, 974-75, 977, 979, 981-83, 985-86, 988-89, 1031. Doctors discharged her in an improved condition on December 13, 2021. *Id.* at 989, 1031.

On January 28, 2022, Plaintiff saw Family Nurse Practitioner (FNP) Jill A. Endicott for "management of a multitude of GI complaints mostly centered around pancreatitis." *Id.* at 1241. Plaintiff told FNP Endicott that she had been hospitalized in September and December of 2021 for her pancreatitis and had two "episodes of pancreatitis" since December that she had "t[oughed] out at

home." *Id.* FNP Endicott examined Plaintiff's abdomen and found it to be soft and non-tender with no masses or organomegaly. *Id.* at 1244. Plaintiff's bowel sounds were normal. *Id.* FNP Endicott declined to prescribe a treatment plan for Plaintiff's pancreatis pending a review of her prior medical records. She did recommend a bulking agent to treat Plaintiff's "mixed irritable bowel" and asked Plaintiff to discontinue dairy products for two weeks in case a "lactose intolerance" was causing some of Plaintiff's symptoms. *Id.* at 1244-45.

**D.    Plaintiff's Function Reports.**

Plaintiff filled out two function reports. On December 27, 2020, Plaintiff did not list pancreatitis or its symptoms as one of her illnesses or conditions that limit her ability to work. *Id.* at 365-72. When asked about using the toilet, she stated she had "GI issues" with no elaboration. *Id.* at 366. On April 20, 2021, Plaintiff did not list pancreatitis or its symptoms as an illness or condition that limited her ability to work. *Id.* at 393, 401. When asked about using the toilet, she stated she "need[s] more restroom breaks" and "do[esn't] always make it to the bathroom." *Id.* at 395.

**E.    State agency medical consultants' opinions.**

On January 17, 2021, state agency medical consultant Dr. Paul Ross, after considering, among other things, Plaintiff's 2013 and 2020 episodes of

pancreatitis, found Plaintiff could perform light work with additional exertional limitations. *Id*. at 192-93, 195-97.

On May 24, 2021, state agency medical consultant Dr. Eunice Gititu, after considering additional medical records related to Plaintiff's pancreatis symptoms, affirmed Dr. Ross's opinion that Plaintiff could perform light work with additional exertional limitations. *Id*. at 213-14, 220. She noted Plaintiff had the capacity "to adapt to work activities within the noted parameters." *Id*. at 220.[3]

### F.    Plaintiff's hearing testimony.

At the hearing the ALJ held in this matter on February 28, 2022, Plaintiff testified about her pancreatitis:

> I have been diagnosed with chronic pancreatitis. I've had [] the worst case that I have ever had in September of last year where I spent two weeks in the hospital. I was back in the hospital in December [for] weeks and I know that I've had it at least five times since that I've been able to catch before it got to the point and wasn't admitted and have to go to the hospital.

*Id*. at 148. When asked about her symptoms, Plaintiff stated that she "hurt[s] a lot" and has had to drastically change her diet, causing her to lose twenty to twenty-five pounds. *Id*. at 148-49. She deals with "pain and bloating" and

---

[3]    The ALJ found these opinions to be "persuasive as generally supported by and consistent with the available evidence." AR 22.

"sometimes the pain is a really sharp pain" which "bends [her] over." *Id*. at 149.

She also has bouts of vomiting "maybe once a week" which usually lasts "just

an evening." *Id*.

### G.    The ALJ's findings.

The ALJ made the following findings on the consistency of Plaintiff's

statements:

> After careful consideration of the evidence, I find that the
> claimant's medically determinable impairments could reasonably
> be expected to cause the alleged symptoms; however, the
> claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are not entirely consistent with
> the medical evidence and other evidence in the record for the
> reasons explained in this decision.

*Id*. at 19.

The ALJ then summarized Plaintiff's treatment history for "recurrent

chronic pancreatitis," as well as her other conditions. *Id*. at 19-20. He noted

her symptoms were "managed via medication use, IV fluids, surveillance

(including periodic specialty consultation), over the counter remedies, and self-

regulation of activity." *Id*. He noted her treatment complaints had included

"abdominal pain, bloating, headaches, nausea, vomiting, numbness, and/or

tingling." *Id*. at 20. He observed that

> clinical examination findings at times demonstrated abdominal
> pain, including "hypersensitivity to touch," tenderness to

palpation, hypoactive bowel sounds, distension, constipation, and/or guarding; nevertheless, intact strength, intact skin, intact sensation, normal bowel sounds, and no tenderness were also demonstrated at times; and on occasion, at least some of these symptoms were also attributed to "depression", and very recently, one provider suggested "lactose intolerance" may be at least in part to blame.

*Id.* at 20 (internal citations omitted). He then stated that

[o]bjectively as to chronic pancreatitis, laboratory studies demonstrate findings consistent with the condition (e.g., high lipase, high amylase). Further, repeat CT scans of the abdomen and/or pelvis demonstrate pancreatic inflammation, stranding, and/or enlargement; although at other times the pancreas is demonstrated to be unremarkable, consistent with waxing and waning symptoms.

*Id.* (internal citations omitted). Finally, he found that

[l]ongitudinally, in addition to the clinical interventions summarized above, the claimant's physical . . . impairments have been managed during the relevant period via the use of prescription medication to manage her symptoms, with mixed results, and endorsed numerous side effects including "tiredness, sweat more, dry mouth, drowsy, weight gain, headache, reduced sex drive[]," and "[] constipation [] can bottom out my blood pressure [] gas." As to both physical and mental impairments longitudinally, additional recommendations have included treatment compliance, medication compliance, dietary management, weight loss, exercise, and improvement of coping skills.

In short, I find that the record is sufficient to support [a finding that her] . . . recurrent chronic pancreatitis . . . [is] "severe." It is recognized that given her diagnoses and associated symptoms, certainly the claimant likely experiences some discomfort . . ., and her conditions and associated symptoms are credited with limiting

her capabilities in the residual functional capacity findings as specified above. However, while the evidence of record reasonably supports that the claimant has limitations as found, it does not support the claimant's allegations that her symptoms are as pervasive as to be disabling.

Specifically, the claimant's complaints regarding the severity and limiting effects of her symptoms are inconsistent with a finding of disability. For example, while the presence of her "severe" physical impairment(s) is medically documented and objectively confirmed, physical impairment related allegations are not supported by consistent and significant exam findings, or the nature of treatment, with the vast majority of exams demonstrating somewhat limited abnormalities .

*Id*. at 20-21 (internal citations omitted). Given these findings, the ALJ stated that his "limitation to light work" was "to account for the pain and fatigue associated with the combination of the impairments demonstrated." *Id*. at 23.

## H. The ALJ's consistency[4] analysis was legally sufficient and supported by substantial evidence.

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *See Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir.

---

[4]   This evaluation, known before as the "credibility" analysis, is now known as the "consistency" analysis. *See* SSR 16-3p, 2017 WL 5180304, at *1-2 (superseding SSR 96-7p). There is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (holding that SSR 16-3p was consistent with the Circuit's prior credibility analysis). So the Tenth Circuit's decisions analyzing credibility remain persuasive authority.

2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). Provided the ALJ links his assessment of Plaintiff's consistency to specific evidence in the record, this Court affords substantial deference to the ALJ's determination. *See, e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) ("But so long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility,' he need not make a 'formalistic factor-by-factor recitation of the evidence.'" (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000))). "[C]ommon sense, not technical perfection," is this Court's guide. *Id.*

The ALJ determined that Plaintiff's report of chronic recurrent pancreatitis could reasonably be expected to produce her symptoms. AR 19-21; *see* SSR 16-3p, 2017 WL 5180304, at *3 ("First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain.").

The ALJ's next step was to determine whether Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were consistent with the objective medical evidence, statements from medical sources, and any other sources that might have information about her

symptoms. SSR 16-3p, 2017 WL 5180304, at *6; *see* AR 18-19. Additional factors for the ALJ to consider were: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of her pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, Plaintiff has received; (6) any measures other than treatment Plaintiff uses or has used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304, at *7-8; *see also* 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). Statements the ALJ finds inconsistent with all the evidence will lead to a determination that "the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *8.

Plaintiff argues the ALJ's consistency analysis was flawed because he offered nonspecific reasons for discounting the severity of her pancreatitis symptoms and he failed to point out any inconsistencies between her testimony and the record evidence. Doc. 17, at 7-8. But the ALJ stated he "considered all symptoms and the extent to which these symptoms can reasonably be accepted

as consistent with the objective medical evidence and other evidence." AR 18. The record supports this statement.

Plaintiff testified that she had her "worst case" of pancreatitis in September 2021 and had been in the hospital, that she had also been hospitalized in December 2021, that she had caught five flare-ups since that time before needing medical intervention, that she "hurt[s] a lot," and that she has a vomiting episode "maybe once a week." *Id*. at 148-49. Citing Plaintiff's testimony as well as pertinent medical records, the ALJ acknowledged Plaintiff's treatment history for pancreatitis included "emergent presentation" and management of symptoms with "medication use, IV fluids, surveillance (including periodic specialty consultation), over the counter remedies, and self-regulation of activity." *Id*. at 19-20. Based on his longitudinal review of Plaintiff's medical history, as well as her daily activities and performance of part-time work during the relevant period, the ALJ concluded Plaintiff's report of constant pancreatitis symptoms was inconsistent with the record. *Id*. at 13-14, 19-23; *see also* SSR 16-3p, 2017 WL 5180304, at *8.

Plaintiff asserts this finding is not supported by substantial evidence because the ALJ failed to acknowledge the serious nature of her pancreatitis symptoms and accommodate them in the RFC. Doc. 17, at 14. She argues the

objective evidence supports her statements of severity and the ALJ erred by failing to consider "the frequency of her pancreatitis flares requiring hospitalization or those that she dealt with at home would cause absenteeism beyond the levels allowed." *Id.*

Plaintiff points to her lengthy hospitalizations for pancreatitis as evidence that she could not work. *Id*. But, as the ALJ observed, this type of emergent care was not "consistent" in her medical history. *See* AR 21 (noting Plaintiff's "physical impairment related allegations are not supported by consistent and significant exam findings, or the nature of treatment, with the vast majority of exams demonstrating somewhat limited abnormalities"). In fact, there was no pattern of hospitalizations, and Plaintiff admitted in her testimony that her September episode was her "worst case." *Id.* at 148. And, while Plaintiff had two serious flare-ups close together, she was otherwise able to effectively manage her intermittent symptoms at home. There was thus no reason for the ALJ to add accommodations for Plaintiff's pancreatic symptoms to his RFC of light work. *See, e.g.*, *Terwilliger v. Comm'r*, 801 F. App'x 614, 628 (10th Cir. 2020) ("It is the ALJ's job to determine the claimant's RFC based on the evidence in the record." (citing *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012))).

The Court can capably review the ALJ's decision on Plaintiff's consistency and finds his discussion of Plaintiff's pancreatitis was adequate based on the record as a whole. *See, e.g.*, *Brownrigg*, 688 F. App'x at 546 (explaining the ALJ must "sufficiently articulate his reasoning" for the court to conduct a "meaningful review"). There was no evidence Plaintiff had or would suffer from a prolonged period of pancreatic flare-ups as she suggested in her testimony. The Court thus finds that the ALJ's determination that Plaintiff's statements about her pancreatic symptoms were inconsistent with a finding of disability is supported by substantial evidence in the record.

## III. Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 21st day of July, 2023.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

18